## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

KARYN A MERIWETHER     *

    Plaintiff,     *

    v.     *     Case No: 03-C-17-001250

CHRISTIANA TRUST, A
DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY, FSB,
AS TRUSTEE FOR ARLP TRUST 5,

And

DLJ MORTGAGE CAPITAL, INC.
11 Madison Avenue
New York, NY 10010
<u>Serve On:</u>
CSC-Lawyers Incorporating Servicing
    Company
7 St., Paul Street, Suite 820
Baltimore, MD 21202

    Defendants

........................................................

### AMENDED COMPLAINT[1]
### AND
### JURY DEMAND

Plaintiff Karyn A. Meriwether (hereafter "Plaintiff" or "Ms. Meriwether"),
through her attorneys Phillip R. Robinson and the Consumer Law Center LLC hereby
brings this Amended Complaint against Defendants (i) Christiana Trust, A Division Of

---

[1] Attached hereto as Exhibit 1 is a comparison copy of Plaintiff's Amended Complaint.

FILED APR 1 4 2017

Wilmington Savings Fund Society, FSB, As Trustee For ARLP Trust 5 ("ARLP") and

(ii) DLJ Mortgage Capital, Inc. ("DLJ") and in support thereof states:

## I. INTRODUCTION

1.     The claims outlined herein exemplify certain predatory and deceptive and debt collection practices which have garnered headlines and damaged the economy for the past several years in which certain so-called professionals flout the law and which have embroiled Ms. Meriwether, to the Defendants' unsafe and unsound debt collection practices related to her mortgage loan since September 9, 2014.

2.     Both of the Defendants have acted illegally as unlicensed professionals and collected sums from Ms. Meriwether that they are not legally entitled to collect.  As a result they have been unjustly enriched and they should be ordered to disgorge their illegal collections and the profits collected with knowledge that they had no right to legally collect.

## II. PARTIES

3.     Ms. Meriwether is a resident of the State of Maryland and the owner of the real property commonly known as 1101 W. Lake Ave., Baltimore, 21201 ("the Property"). She resides at the property and the loan subject to this action was utilized to acquire the Property and solely for personal, consumer purposes.

4.     Defendant ARLP claimed to have been the owner of Ms. Meriwether's mortgage loan subject to these proceedings from September 9, 2014 through February 21, 2017.  At the time ARLP acquired its interest, as a successor to Bank of America, NA, it believed Ms. Meriwether's loan to be in default.  ARLP is not now and never has been licensed as

2

a Maryland collection agency or mortgage lender, although it is required to be licensed. ARLP first retained Ocwen Loan Servicing, LLC ("Ocwen") as the mortgage servicer for Ms. Meriwether's loan and thereafter retained Fay Servicing LLC ("Fay") to act as its servicer. Ocwen and Fay attempted to indirectly collect from Ms. Meriwether, even though each has no legal right to do so since ARLP was acting as an unlicensed collection agency and/or mortgage lender.

5.     Not named as a party to this action is Ocwen, a mortgage lender and servicer collecting on behalf of ARLP. Ocwen serviced Ms. Meriwether's loan from September 9, 2014 to July 31, 2016 relevant to the facts addressed herein. Ocwen has never been licensed to do business as a mortgage servicer at ARLP's business addresses associated with Plaintiff's loan which as 402 Strand St., Frederiksted, VI  00820 according to the recorded assignment in land records of Baltimore County at Book 35366, Page 183.

6.     Not named as a party to this action is Fay, a mortgage lender and servicer who also collected on behalf of ARLP from August 1, 2016 to February 28, 2017.   Fay has never been licensed to do business as a mortgage servicer at ARLP's business addresses associated with Plaintiff's loan which as 402 Strand St., Frederiksted, VI   00820 according to the recorded assignment in land records of Baltimore County at Book 35366, Page 183.

7.     Not named as a party to this action, Bank of America, NA ("BANA") is the prior owner of Ms. Meriwether's mortgage loan before selling the loan on September 9, 2014 to ARLP.

8.     Defendant DLJ claims to have been the owner of Ms. Meriwether's mortgage loan subject to these proceedings from February 21, 2017 through the present.  DLJ is not now and has not been licensed as a Maryland mortgage lender during the times relevant to this Amended Complaint although it is required to be licensed.  DLJ has retained Select Portfolio Servicing, Inc. ("SPS") to act as its servicer related to Plaintiff's loan subject to these proceedings. SPS has attempted to indirectly collect from Ms. Meriwether, even though each has no legal right to do so since DLJ is acting as an unlicensed mortgage lender. SPS has never been licensed to do business as a mortgage servicer at DLJ's business addresses associated with Plaintiff's loan which as 11 Madison Avenue, New York, NY 10010 according to the recorded assignment in land records of Baltimore County at Book 38733, Page 230.  DLJ is a wholly owned subsidiary of Credit Suisse (USA), Inc. Credit Suisse (USA), Inc. is a wholly owned subsidiary of Credit Suisse Holdings (USA), Inc., which is a wholly owned subsidiary of Credit Suisse Group.

9.     Not named as a party to this action is SPS, a mortgage lender and servicer who also collect on behalf of DLJ from March 1, 2017 to the present.   SPS has never been licensed to do business as a mortgage servicer at DLJ's business addresses associated with Plaintiff's loan which as 11 Madison Avenue, New York, NY 10010 according to the recorded assignment in land records of Baltimore County at Book 38733, Page 230.

### III. JURISDICTION & VENUE

10.    This Court has jurisdiction over this matter because the Defendants regularly transact business and performs work and services in Maryland and Baltimore County, Maryland and have availed itself of the jurisdiction of this Court through its appointed

agents and foreclosure trustees.  The Defendants also claim an interest in the Property related to this litigation which is located in Baltimore County, Maryland.

11.     Declaratory and injunctive relief are available pursuant to MD. CODE ANN. CTS. & JUD. PROC., §§ 3-401-3-415.

12.     Venue is appropriate in this Court because the Defendants conduct business within Baltimore County, Maryland.

## IV. FACTS

**A.     Background on Loan and BANA's Servicing**

13.     On June 7, 2001 Ms. Meriwether refinanced by executing a promissory note with Bank of America, N.A. in the amount of $175,046.50, secured by a deed of trust on the Property.

14.     On or about July, 2011, Ms. Meriwether, through no fault of her own, suffered a reduction in income. As a result, she began to fall behind on her mortgage payments.

15.     On or about March 3, 2014, Ocwen, Ms. Meriwether's servicer, solicited her with the opportunity to apply for a mortgage modification. Ms. Meriwether relied on this offer, and applied for mortgage assistance on or about May 8, 2014.

**B.     Background on ARLP's Ownership of Plaintiff's Loan**

16.     On or about September 9, 2014, Ms. Meriwether's loan was sold to ARLP by BANA for a sum, upon information and belief, which was less than the sum claimed due by BANA at the time from Plaintiff.  This sale was not associated with any loan sale associated with any government program but was part of a larger transfer of distressed,

non-performing loans by BANA to collection agencies looking to acquire loans for less than what was claimed due and owing.

17.     As part of the distressed sale from BANA, ARLP substituted itself as the named party in Plaintiff's Deed of Trust as reflected in the Assignment of Deed of Trust recorded in the land records of Baltimore County at Book 35366, Page 183.

18.     On or about October 1, 2014, Ms. Meriwether entered into a mortgage modification agreement with Ocwen, ARLP's authorized agent.

19.     At no time from September 9, 2014 to February 21, 2017 was ARLP licensed as a collection agency or mortgage lender under Maryland law.  However, ARLP demanded and collected indirectly through its agents that Ms. Meriwether pay it interest, fees, and other costs in that time period.  These sums equal approximately:  $21,611.11 in interest and $88.58 in late fees.

20.     ARLP's demands for sums it was not legally entitled to collect as an unlicensed collection agency/mortgage lender occurred on multiple dates including: November 14, 2014; March 21, 2016; March 30, 2016; April 19, 2016; May 17, 2016; June 17, 2016; July 19, 2016; August 16, 2016; September 12, 2016; October 10, 2016; October 19, 2016; November 10, 2016; December 10, 2016; and January 10, 2017.

21.     Notwithstanding that Plaintiff was also current on her modified mortgage, ARLP's agents identified herein misrepresented to her on multiple occasions, including March 21, 2016; March 30, 2016; September 12, 2016; October 10, 2016; October 19, 2016; November 10, 2016; December 10, 2016; January 10, 2017, that she was not current on her loan and was otherwise past-due on her modified loan.

6

22.     In reliance to ARLP's agents knowing misstatements and representations that she was behind, Plaintiff contacted ARLP's agents to try to resolve the errors.  For example, in reliance to the misstatements, Plaintiff wrote to Fay on January 5, 2017 and notified it of its errors made on behalf of ARLP and requested a response.

23.     ARLP is not now and never has been licensed as a Maryland collection agency or Maryland mortgage lender and is not exempt from the licensing statutes.  It has however, acted as an unlicensed collection agency and/or mortgage lender by demanding and collecting through Ocwen and Fay sums it is not legally entitled to collect from Ms. Meriwether since it is acting without a mandatory license as a collection agency and/or mortgage lender.

24.     ARLP relied upon the records of Ocwen for its belief that Ms. Meriwether's loan was in default at the time it acquired his loan and performed no investigation of the facts available to it whatsoever, thus willfully blinding itself to the knowingly false information conveyed to it (or withheld from it) by its authorized agent Ocwen.

25.     ARLP has collected sums indirectly from Ms. Meriwether through Ocwen and Fay since entering the modification agreement with her on or after October 1, 2014 through February 21, 2017.

   C.     Background on DLJ's Ownership of Plaintiff's Loan

26.     DLJ acquired Plaintiff's loan with knowledge of the claims asserted by the Plaintiff against ARLP since this matter was a public record and Fay was acting as its agent at the time of acquisition and Fay was aware of this litigation.

27.   As part of the distressed sale from ARLP, DLJ substituted itself as the named party in Plaintiff's Deed of Trust as reflected in the Assignment of Deed of Trust recorded in the land records of Baltimore County at Book 38733, Page 230.

28.   At no time from February 22, 2017 to the present is DLJ licensed as a mortgage lender under Maryland law.  However, DLJ demanded and collected indirectly through its agent that Ms. Meriwether pay it interest in that time period.  These sums equal approximately:  $736.72 per month in interest.

29.   DLJ is not now and never has been licensed as a Maryland collection agency or Maryland mortgage lender and is not exempt from the licensing statutes.  It has however, acted as an unlicensed collection agency and/or mortgage lender by demanding and collecting through SPS sums it is not legally entitled to collect from Ms. Meriwether since it is acting without a mandatory license as a collection agency and/or mortgage lender.

30.   DLJ's demands for sums it was not legally entitled to collect as an unlicensed mortgage lender occurred on multiple dates in March 2017 and April 2017.

### D.   The Defendants' Legal Duties Related to The Subject Transaction

31.   The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the

borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005). This duty of care applies to ARLP and DLJ.

32.     Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), Defendants' agents identified herein had a duty to comply with any all obligation(s) found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), these agents were required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), these agents were not permitted to "impos[e]... a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."

33.     The Maryland Mortgage Fraud Protection Act, MD. CODE ANN., REAL PROP. § 7-401, *et seq.*, establishes a statutory duty upon both Defendants to disclose to mortgage borrowers and homeowners, like the Plaintiff, material information with respect to the mortgage lending process which includes the servicing of mortgage loans. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011).

### D. MARYLAND'S RESPONSE TO THE UNLICENSED COLLECTION AGENCY AND DEBT COLLECTION CRISIS AS RELATED TO THE PLAINTIFF

34.     ARLP is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(4)(6) since it is a business engaged in purchasing and collecting on defaulted debts by using

interstate wires and mail, among other acts. *See also, Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (the FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. *See Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir.1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir.1997); *see also Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir.2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir.1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985)").

35.    ARLP also acts as a "collection agency" as defined by the Maryland Collection Agency Licensing Act, MD CODE ANN., BUS. REG. §7-101, *et seq.* ("MCALA").

36.    As part of its routine and on-going collection practices, ARLP regularly collects monthly mortgage payments and/or reinstatement sums or short-payoffs by and through the mails and interstate wires through its authorized servicer. ARLP also attempts to collect through civil litigation in Maryland Courts authorized by it and through its authorized agents, including actions which are filed as foreclosure actions in the state courts and also through bankruptcy proceedings in the United States Bankruptcy Court for Maryland.

37.    Under MD CODE ANN., BUS. REG. §7-301, a person must have a license to do business as a collection agency in the State of Maryland.

38.    The Maryland Commissioner of Financial Regulation, the state regulator of

persons who acquire consumer debt after default and file lawsuits in Maryland to collect

the debt, has clearly stated that:[2]

> ... 4.   The position of the Agency is that, unless otherwise exempt, a
> person who brings actions in Maryland State courts to collect consumer
> claims which were acquired when the claims were in default is
> knowingly and willfully doing business as a "collection agency" in the
> State under [Bus. Reg.] § 7-101(c).  This includes, but is not limited to, the
> named Plaintiffs in such judicial actions, which will normally be the owners
> of the consumer debt.
>
> 5.   Thus the Agency's position is that a Plaintiff in a Maryland State
> court action brought to collect a consumer claim which was acquired
> when the claim was in default is required to be licensed as a collection
> agency under MCALA, and is subject to the regulatory authority of the
> Agency in the conduct of that litigation.
>
> 6. The position of the Agency is that a person who brings judicial actions in
> Maryland State courts to collect consumer claims which were acquired when
> the claims were in default also meet the definition of "collector" under CL
> § 14-201(b) of the Maryland Consumer Debt Collection Act ("MCDCA,"
> at Commercial Law Article ("CL"), § 14-201 *et seq.,* Annotated Code of
> Maryland) and of "debt collector" under 15 U.S.C. § 1692(a) of the Fair
> Debt Collection Practices Act ("FDCPA," at 15 U.S.C. § 1692, *et seq.)...*

39.    Every collection effort in Maryland by ARLP without a Collection Agency

license, including each and every foreclosure action filed in Maryland courts on its behalf

as well as the collection and attempted collection of any mortgage payments, and each and every

judgment lien filed in Maryland, is an unfair or deceptive trade practice since these actions

were committed without the right to do so as stated by the legislature.

---

[2] *In the Matter of:  Midland Funding, LLC, et al.,* before the Maryland State Collection
Agency Licensing Board in the Office of the Commissioner of Financial Regulation,
CFR-FY-2010-063.

40. Before the 2007 session of the Maryland General Assembly, debt buyers like ARLP sought to avoid Maryland statutes and regulation by asserting that they were not subject to Maryland statues addressing collection agencies. *See*, Legislative History for 2007 chap. 472 (Bus. Reg. 7-101) HB 1324. As a result, the 2007 General Assembly required ARLP, and other debt buyers, to acquire a license by October 1, 2007. *Id.*

41. Then Maryland Commissioner of Financial Regulation, Charles W. Turnbaugh, explained the purpose of the bill, HB 1324, at the time as follows:

> ... The law does not require licensing for businesses that only collect their **own** consumer debts, unless the business uses a name or other artifice that indicates that another party is attempting to collect the consumer debt. However, the evolution of the debt collection industry has created a "loophole" used by some entities as a means to circumvent current State collection agency laws. Entities, such as "debt purchasers" who enter into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor, currently collect consumer debt in the State without complying with any licensing or bonding requirement. The federal government has recognized and defined debt purchasers as collection agencies, and requires that these entities fully comply with the Federal Fair Debt Collection Practices Act. **This legislation would include debt purchasers within the definition of a "collection agency," and require them to be licensed by the Board before they may collect consumer claims in this State** ... [emphasis added].

42. However, ARLP has collected from Ms. Meriwether through Ocwen and Fay while it did not have the mandatory license required by MCALA or the Maryland Mortgage Lender Law and continued its business of collecting debts acquired in default and filing collection lawsuits in Maryland courts without the right to do so.

43. In sworn testimony before the United States District Court for the District of Maryland, Kelly Mack from the Maryland Department of Labor, Licensing, and Regulation testified that "[i]t has been the consistent position of the [Maryland State

Collection Agency] Board that a Consumer Debt Purchaser (i.e., a person who acquires consumer claims which are in default at the time of the acquisition) that collects consumer claims through litigation is a 'collection agency' under Maryland law and is required to be licensed as such, regardless of whether an attorney representing the Consumer Debt Purchaser in the litigation is a licensed collection agency."

44.     Following enactment of HB 1324 the Maryland Commissioner of Financial Regulation issued its position on the change in law as DLLR Advisory Notice No. 07-06 ("Advisory"). The Advisory clearly stated the Commissioner's official position on the changes to MCALA, i.e.: "... effective October 1, 2007 any person engaged in the collection of a consumer claim the person owns, if the claim was in default when the person acquired it, is required to be licensed as a collection agency pursuant to HB 1324 ...".

45.     Maryland's Commissioner of Financial Regulation has also determined that a debt purchaser who acquires mortgage debts must be licensed as a mortgage lender, unless otherwise eligible for an exemption from the Maryland Mortgage Lender Law. *In the Matter of: National Payment Relief, LLC, et al.,* before the Maryland State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation, CFR-FY-2014-0001.

46.     DLJ is a mortgage lender under Maryland law by virtue of its acquisition of Plaintiffs' loan and substitution of itself as the named lender in Plaintiff's recorded Deed of Trust on the Assignment of Deed of Trust recorded in the land records of Baltimore County at Book 38733, Page 230.

47.     As part of its routine and on-going collection practices, DLJ regularly collects monthly mortgage payments and/or reinstatement sums or short-payoffs by and through the mails and interstate wires through its authorized servicer. .

48.     Unlicensed mortgage lenders, including DLJ and ARLP, are simply are entitled to collect certain claimed debt, directly or indirectly, in the State of Maryland.  MD. CODE ANN., FIN. INST. § 11-504 ("A person may not act as a mortgage lender unless the person is: (1) A licensee; or (2) A person exempted from licensing under this subtitle"). MD. CODE ANN., FIN. INST. § 11-523(b)("Any unlicensed person who is not exempt from licensing under this subtitle who makes or assists a borrower in obtaining a mortgage loan in violation of this subtitle may collect only the principal amount of the loan and may not collect any interest, costs, finder's fees, broker fees, or other charges with respect to the loan").

49.     Unlicensed lenders and collections agencies may not borrow another's license to collect since mortgage lenders and collection agencies are required to be licensed at every address where they do business.

50.     ARLP has willfully and knowingly sought, directly or indirectly, to collect debts acquired in default and therefore acted as a debt collection agency and/or mortgage lender in Maryland without a license to do so.

51.     DLJ has willfully and knowingly sought, directly or indirectly, to collect Plaintiff's mortgage loan subject to this action without a license to do so. Everyone is presumed to know the law and DLJ knows the law but is disregarding it.

E.     PLAINTIFF'S DAMAGES & LOSSES CLAIMED HEREIN

14

52.    As a direct and proximate result of the acts and omissions of the Defendants as described herein, Plaintiff has suffered losses and damages.  Specifically:

     a.  ARLP has collected sums it claimed due from Plaintiff in the form of interest and costs which it was prohibited from collecting under Maryland law as an unlicensed mortgage lender/collection agency.  These sums equal approximately $21,611.11 in interest and $88.58 in late fees constitute economic damages.

     b.  DLJ has collected sums, as of this filing, it claimed due from Plaintiff in the form of interest which it was prohibited from collecting under Maryland law as an unlicensed mortgage lender.  These sums equal approximately $736.72 constitute economic damages.

     c.  Because ARLP and DLJ collected these sums illegally, neither are entitled to retain the profits from the sums collected and must disgorge the profits each made on the sums collected from Plaintiff because it would be unjust for ARLP and DLJ to retain profits for its illegal activities.

     d.  Plaintiff has sustained non-economic damages and losses as a result of ARLP's acts and omissions, including those of its authorized agents.  This emotional damage is manifested by frustration, annoyance, fear, and anger that ARLP and its authorized agents continued to make false claims for sums not legally due from here as well as making knowingly false statements about the status of Plaintiff's loan.  These damages and losses are equal to $15,000.

e. Plaintiff has sustained non-economic damages and losses as a result of DLJ's acts and omissions, including those of its authorized agent. This emotional damage is manifested by frustration, annoyance, and anxiety that DLJ and its authorized agent will continue to demand sums from Plaintiff which are not legally due. These damages and losses are equal as of this filing $4,000 and increase as long as DLJ continues to act illegally.

## COUNT I

## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

53. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

54. Ms. Meriwether seeks a declaration that: (a) ARLP was not entitled as a matter of law to obtain any judgment in this or any other court related to the collection of consumer mortgage debt since ARLP is acting unlawfully as an unlicensed collection agency and/or mortgage lender; (b) DLJ is not entitled as a matter of law to obtain any judgment in this or any other court related to the collection of consumer mortgage debt since DLJ is acting unlawfully as an unlicensed mortgage lender; (c) Ms. Meriwether seeks a declaration that ARLP and DLJ were only permitted to collect principal payments on her loan since each were acting as an unlicensed mortgage lender.

55. DLJ should be enjoined from attempting to collect any sums, other than the monthly principal due, from Ms. Meriwether, directly or indirectly, since DLJ is operating as a mortgage lender without a mandatory license.

WHEREFORE, Plaintiff Karyn Meriwether prays that this Court:

a.      Order appropriate injunctive relief against DLJ to prevent further violations of law or provide benefits to DLJ from its illegal activities, including a preliminary and permanent injunction;

b.      Order and declare that DLJ and ARLP were only entitled to collect the monthly, principal payment from Plaintiff on her mortgage loan since each were acting without the professional licenses required of them;

c.      Order and declare that as a matter of law DLJ and any agency acting on its behalf may not collect directly or indirectly from Ms. Meriwether's mortgage debt related to her home and Property;

d.      Order and declare that DLJ is not entitled to the assistance of any Maryland Court to collect any alleged consumer debt of Ms. Meriwether's;

e.      Award reasonable attorneys' fees, litigation expenses and costs;

f.      Order other appropriate declaratory relief; and

g.      Provide such other or further relief as the Court deems appropriate.

## COUNT II

### UNJUST ENRICHMENT

56. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

57. DLJ and ARLP are not entitled to receive any benefit or payments from Plaintiff for interest and fees related to her mortgage loans since each were acting without the professional license(s) required of persons in their situation.

58. DLJ and ARLP are presumed to know the legal duties and terms of Plaintiff's loan and its governing documents while each owned the loan.

59. DLJ and ARLP had affirmative duties to only collect and demand sums from Plaintiff which were legally due yet they have claimed sums they were not legally entitled to collect.

60. DLJ's and ARLP's failure to disclose the true facts and their illegal collection activities related to Plaintiff's loan was a material omission.

61. Due to their presumed and actual knowledge, as described *supra*, DLJ and ARLP had an appreciation that each was not entitled to receive the benefits each collected from Plaintiff in the form of interest and costs and the profits that flow from that sum of money that they improperly obtained based upon their false, unfair, and deceptive statements made by them or their agents acting on their behalf.

62. The acceptance and retention by DLJ and ARLP of any sums received from Plaintiff that they were not entitled to legally collect is inequitable since DLJ's and ARLP's collection activities without a license constitute crimes under Maryland law.

63.    DLJ is not entitled to any equitable relief in the form of a set-off or recoupment since it comes before the Court with unclean hands having engaged in illegal activities in the State of Maryland as described herein.

> WHEREFORE, Plaintiff respectfully requests the Court enter judgment pursuant to common law unjust enrichment in favor of Plaintiff and against DLJ and ARLP for disgorgement of all sums collected by them from Plaintiff, directly or indirectly, as well as the profits therefrom equal to approximately $22,436.41 plus the profits realized from that sum,

which they did not have the legal right to collect as unlicensed mortgage lenders; and grant Plaintiff such other and further relief as this court finds necessary and proper.

## COUNT III

### MARYLAND'S CONSUMER DEBT COLLECTION ACT ("MCDCA")
### Md. Code Ann., Com. Law § 14-201, *et. seq.*
### &
### VIOLATION MARYLAND'S CONSUMER PROTECTION ACT ("MCPA"),
### MD. CODE ANN., COM. LAW § 13-101 *et seq.*

64.    Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

65.    DLJ and ARLP each acted as collectors under the MCDCA by attempting to collect upon an alleged, Plaintiff's mortgage debt arising out of a consumer transaction— her mortgage loan used to acquire and improve their home and Property.  MD CODE ANN., COM. LAW §14-201(b).

66.    DLJ and ARLP attempted to assert a right to collect sums from Plaintiff they were not legally entitled to collect as unlicensed mortgage lenders (and in ARLP's case an unlicensed collection agency as well).

67.    By violating Maryland laws and the Defendants' duties under Maryland law and by utilizing methods and means of collection not permitted by law or the relationship governing the parties, DLJ and ARLP each violated the MCDCA.  By such acts and omissions DLJ and ARLP each have claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist, in violation of the MCDCA.  MD CODE ANN., COMM. LAW §14- 202(8).

68.     DLJ and ARLP has also improperly and wrongfully used communications filed in the land records related to Plaintiff's Loan, that give the appearance that their acts and omissions described herein were authorized, issued, or approved by a government, governmental agency, or lawyer when they were not.  DLJ and ARLP have no right to make false and incorrect representations about the status of Plaintiff's loan.  Such acts and omissions constitutes a separate violation of MD CODE ANN., COMM. LAW §14-202(9).

69.     Plaintiff is therefore entitled to her damages and losses described *supra* which have proximately resulted from DLJ's and ARLP's actions in violation of the MCDCA. MD. CODE ANN., COM. LAW, § 14-203.

70.     The Defendants' violations of the MCDCA, described *supra*, are also *per se* violations of the MCPA pursuant to § 13-301(14)(iii) of the Commercial Law Article.

71.     Plaintiffs reasonably relied upon the material acts and actions of The Defendant's violations of the MCDCA, described in Count II *infra*, are also *per se* violations of the MCPA pursuant to § 13-301(14)(iii) of the Commercial Law Article.

72.     Plaintiffs reasonably relied upon the material acts and actions of DLJ and ARLP as described *supra*.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment pursuant to the MCDCA and MCPA in favor of Plaintiff and against DLJ and ARLP for actual economic and non-economic damages and losses of $41,436.41 plus reasonable attorneys' fees and costs incurred; and grant Plaintiff such other and further relief as this court finds necessary and

proper.

Respectfully Submitted,

Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff respectfully requests a jury trial on each of her legal claims asserted herein.

_____
Phillip Robinson

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2017, a copy of the foregoing was mailed via first class mail, postage prepaid, to:

David Solan
BWW Law Group LLC
6003 Executive Blvd., Suite 101
Rockville, MD 20852
*Attorney for Defendant Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for ARLP Trust 5*

I further certify that a copy of the foregoing will be served upon Defendant DLJ

Mortgage Capital, Inc. once the summons has been issued by the Honorable Clerk.


_____
Phillip Robinson